## HODGES v. ANDERSON.
### No. 6076.

Court of Appeals of the District of Columbia.
Argued March 8, 1927.

Decided April 23, 1934.

George C. Shinn, of Washington, D. C., for appellant.

Frederick A. Fenning, of Washington, D. C., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

MARTIN, Chief Justice.

An appeal form an order confirming the report of a committee of an insane person, also accepting his resignation, and releasing and discharging him as such committee.

It appears that in 1926 the appellee, Lorain Anderson, was appointed and qualified by the Supreme Court of the District of Columbia as committee of the person and estate of Cynthia G. Anderson, a person then non compos mentis. The appellee was then the husband of the ward.

In June, 1931, the appellee filed a petition requesting the appointment of a guardian ad litem for the ward, and that the court accept appellee's resignation as committee of the person and estate of the ward. A guardian ad litem was then appointed, and after-

wards the appellant, Louis O. Hodges, Jr., was appointed as committee in the place of the appellee. In November, 1932, the appellee filed his third and final account as committee, and the account and vouchers filed therewith were forthwith transmitted to the auditor for examination and report. The auditor, after consideration, filed his report approving appellee's account.

The appellant, as the second committee, filed exceptions to the report of the auditor. Upon a hearing duly had, the court overruled the exceptions and approved the report of the auditor as filed. Appellant now prosecutes an appeal from that order.

Appellant's chief complaint relates to certain promissory notes held by appellee as assets of the estate. Appellant charges that appellee negligently failed to collect the same at a time when they were collectible, and that by reason of his delay the notes became uncollectible and the amount thereof lost to the estate.

It is disclosed by the record that, at the time when the estate of the ward passed into the possession of the appellee as committee, it included five promissory notes aggregating $4,500 in amount, signed by Wardman and Bones as makers, dated March 14, 1925, and due five years after date. The notes had been purchased by the ward while of sound mind prior to the appointment of the committee, and were owned by her at the time of the appointment. The notes, together with many other notes in a large amount, were secured by a first deed of trust upon the Carlton Hotel property in Washington, D. C., and were made payable at the office of Swartzell, Rheem & Hensey Company, a company of brokers by whom the notes were sold to the public. The debtors were entitled by the terms of the notes to prepay them to Swartzell, Rheem & Hensey Company at any time before maturity by the payment of two months' interest in advance at the time of payment. The notes were wholly unpaid at the time when they came into the possession of the appellee as committee, and remained unpaid in his possession at the time of his resignation.

The appellant in his exceptions to the auditor's report charged that the notes had become a total loss to the estate, due to the carelessness and mismanagement of the appellee as committee of the ward, and claimed that the amount thereof should be charged to him in his account. The auditor, however, held that the evidence failed to sustain appellant's charge of negligence, and accordingly overruled the same. The court sustained

this ruling of the auditor, and this is assigned as error by the appellant in this court.

We cannot sustain the contention of the appellant. It appears that during the entire time in question the appellee was an officer of the United States Navy in active service, and was assigned to various foreign posts of duty, and consequently was absent much of the time from the District of Columbia. He opened a bank account as committee with the National Savings & Trust Company of Washington and left the notes with that company for collection in order that the proceeds when collected might be deposited in his account as committee. The notes did not become due until March 14, 1930. However, in October, 1928, Wardman and Bones, the debtors in the notes, paid them in full to the Swartzell Company pursuant to the right of prepayment reserved to them by the terms of the notes, and the deed of trust securing them was released and canceled by the trustees named therein. This fact, however, was not made known to the appellee, nor to the National Savings & Trust Company, both of whom remained under the belief that the notes were still obligations of Wardman and Bones, the makers, and were secured by the first trust on the Carlton property. During this period, the Swartzell Company occupied a prominent place in the financial life of the city of Washington, possessing high credit and being generally considered as an honorable and responsible company. However, in February, 1931, the company became bankrupt, and was discovered to be wholly insolvent. The notes in this case have not been paid, but the appellee as the former committee filed a claim upon them with the referee in bankruptcy of the bankrupt company. We think that these facts do not sustain the allegation of negligence by appellee in the management of his ward's estate.

It appears that in October, 1928, at a time when the notes were paid to Swartzell, Rheem & Hensey Company, that company informed the appellee that the notes would be paid at once if presented at their office, although they had not yet matured. They requested the appellee to instruct the National Savings & Trust Company to present them for that purpose. The appellee communicated this with instructions to the trust company to present the notes for payment and to arrange under the orders of the court for the reinvestment of the proceeds. However, when the notes were presented to the Swartzell Company, that company informed the trust company that such prepayment would not then be made. In consequence of this, the notes remained in possession of the National Savings & Trust Company until their maturity on March 14, 1930, and for almost a year thereafter. During this time the interest upon the notes was promptly paid by the Swartzell Company as if the notes were unpaid, although payment had in fact been made to that company.

It may be repeated that the appellee did not make this investment, nor so far as appears, did he have any part in the purchase of the notes in the first instance. He received them as part of the estate of his ward, and was not entitled by their terms to demand payment of them until their maturity. He had no means of knowing that the notes had been paid by Wardman and Bones to the Swartzell Company in 1928. No notice was served upon him concerning such payment. The mere statement made to him by the Swartzell Company that the notes might be paid before maturity if presented did not serve to put him on notice that they had already been paid at that time. The notes were left by him with the National Savings & Trust Company in his absence in order that the interest might be collected when due, as it was, and that the principal might be received when paid at maturity. The appellee was under the impression that the proceeds of the notes when paid could not be reinvested without an order of the court, and he applied to the court for instructions on this point. Inasmuch, however, as the notes were not in fact paid to him, no answer was made to his inquiry. These facts do not sustain the charge of negligence made against appellee by his successor as committee.

The appellant also complains of the allowance by the lower court of the sum of $250 to the appellee's attorney for services in connection with the estate, and the allowance of $135 to the auditor for services likewise rendered, and also that the court ordered the expenses of this appeal to be paid from the assets of this estate. The appellant complains that the charges so allowed were excessive and unreasonable. It is recognized that such issues are addressed largely to the discretion of the trial court, and we see no reason to believe that the court failed in this instance to perform its duty in that particular. We also approve the court's order that the costs of this appeal be paid from the assets of the estate.

Upon the entire record we affirm the orders of the lower court.